UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Brokerage Insurance Partners, Inc.<br><br>    Plaintiff,<br>v.<br><br>Fidelity & Guaranty Life Insurance Company,<br>Fidelity & Guaranty Life,<br>FS Holdco II Ltd, and<br>John Doe<br><br>    Defendants. | Civil Action No. 17-cv-1815<br><br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Brokerage Insurance Partners, Inc. for itself and on behalf of all Class members, by and through its attorneys Davis Agnor Rapaport and Skalny, states the following:

# PARTIES

1. Brokerage Insurance Partners, Inc. ("BIP") is a Florida Corporation with its principal place of business in Boca Raton, Florida.

2. Fidelity & Guaranty Life Insurance Company ("Fidelity") is a Maryland corporation organized under the laws of Maryland and with a principal place of business in Baltimore, Maryland.

3. Upon information and belief, Fidelity & Guaranty Life is an insurance holding corporation organized under the laws of the State of Delaware ("Fidelity Life") and is a parent corporation of Fidelity.

4. Upon information and belief, FS Holdco II Ltd. is a corporation organized under the laws of the Cayman Islands and is a parent corporation of Fidelity ("FS Holdco").

5. Upon information and belief, John Doe is a seller's agent or advisor who advised Fidelity in its efforts to find a buyer.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over BIP's claims under 28 U.S.C. §§ 1332 and 1367 because the value of the matter in controversy exceeds $75,000 and the controversy is between parties with diverse citizenship.

7. Venue is proper under 28 U.S.C. § 1391(b) because the contracts at issue were made and entered into in the State of Maryland and include a venue provision specifying the courts of the State of Maryland or this District Court.

**SUMMARY OF THE ACTION**

8. At least as early as January 2015, BIP entered into a contractual relationship with Fidelity as a general agent[1] (the "Agency Agreement"). Under that agreement, BIP and Fidelity agreed that BIP would be authorized to sell, and enable individual agents to sell, Fidelity's life insurance products.

9. BIP has entered into agreements with individual agents who contract with and are appointed by Fidelity to sell Fidelity's life insurance products. To accomplish that goal, these individual agents have also entered into Individual Agent Agreements with Fidelity.

10. The Individual Agent Agreement states that Agents are paid according to a Compensation Schedule. The Compensation Schedule establishes the percentage premium to be paid to the individual agent on an annual basis.

11. The Compensation Schedules for the years 2015 and 2016 provided for extraordinarily high commission payments payable to Fidelity's appointed agents and contracted agencies that were designed to promote the writing of life insurance policies.

---

[1] In the life insurance industry, a general agent acts as an intermediary between life insurance companies, such as Fidelity, and individual insurance agents, who sell life insurance to individuals and companies.

12.     The Compensation Schedule also states that "Any policies in force at the time this Compensation Schedule becomes effective shall be subject to the commission and commission chargeback provisions set forth in the Compensation Schedule applicable at the time such policies were issued."

13.     Nothing in either the Agency Agreement or the Individual Agent Agreement allows Fidelity to change any Clawback Term or Compensation Schedule contained therein retroactively for policies in force.

14.     On information and belief, Fidelity uses an automated system whereby its contracts with general agents and individual agents are automatically generated such that its contracts with both general agents and individual agents are substantially identical except for the names of the parties.

15.     According to Fidelity's website, BIP is one of approximately 25,000 licensed agents under contract with Fidelity.  Because each of these agents most likely has a contract substantially identical to BIP, each agent is similarly situated and is therefore a putative class member.



16.     BIP and its Individual Agents sell Fidelity's life insurance products under their respective agreements.  Those life insurance products provide for either monthly, quarterly, semi-

3

annual or annual premium payments, as determined by the insured. Insurance policies issued that provide for annual payments cannot lapse within the first year of issue.

17. Pursuant to the Individual Agent Agreements, when individual agents associated with BIP sold life insurance, Fidelity would pay compensation to the individual agent based upon the then effective Compensation Schedule.

18. BIP was paid an override commission and bonus compensation based on the premium volume generated by individual agents in its geographic region.

19. If a life insurance policy lapsed[2] prior to the end of its first year of issue, the Individual Agent Agreement required the individual agent to return any compensation paid to it by Fidelity for that lapsed policy (the "Clawback Term"). For example, under the Agreement, if an individual bought a life insurance policy on January 1, 2015 and made all required payments until after January 1, 2016, the general agent and individual agent would keep all compensation paid by Fidelity. In contrast, if the same policy was purchased on January 1, 2015, but the individual stopped making payments before January 1, 2016, the general agent and individual agent were required to return any compensation paid by Fidelity.

20. BIP's Agency Agreement requires BIP to indemnify Fidelity for, among other things, any clawback payments not returned to Fidelity by the Individual Agent as well as all override and bonus compensation received by BIP from Fidelity in connection with any lapsed policy.

21. In reliance on their respective agreements, BIP and other similarly situated general agents and individual agents conducted their businesses to sell hundreds of millions of dollars in life insurance products for Fidelity.

---

[2] A policy is considered to have lapsed if the policy holder does not make required payments within the agreed upon time period.

22. On or around the beginning of 2017, Fidelity announced to BIP and to other similarly situated general agents and individual agents that it was unilaterally and retroactively changing the Individual Agent Agreements to increase the Clawback Term to two years from one year.

23. As a result of Fidelity's retroactive change to the Clawback Term, Fidelity sent letters requiring BIP, its individual agents, its sub-agencies, and their respective individual agents to return compensation paid to them that was related to life insurance policies that had lapsed after the original one-year Clawback Term but before the new two-year Clawback Term (the "Demand Letters").

24. The Demand Letters sent to Individual Agents required the agents to return all compensation paid on lapsed policies. The Demand Letters to Agencies required return of all portions of overrides and other compensation paid on now-lapsed policies and for the Agency to indemnify Fidelity for any commission not returned by the Agency's Individual Agents.

25. Fidelity's attempted retroactive change to the Individual Agent's Agreement and consequent Demand Letters have caused significant monetary, reputational, and relational harm to BIP and other similarly situated general agents and individual agents. Fidelity's actions have harmed the businesses and contractual relationships between BIP and its individual agents, and upon information and belief have caused similar harm to other Class members.

26. In its Demand Letters to BIP and its related agents, Fidelity has threatened to place BIP and its individual agents on the "vector list." Being placed on the "vector list" serves to blackball an individual agent and destroy that agent's business as that agent can no longer be appointed with other insurance companies and sell their products. Being placed on the "vector list" also adversely affects an agent's credit report.

27. Upon information and belief, Fidelity has sent nearly identical letters containing nearly identical threats to other members of the Class.

28. Fidelity's threats have interfered with BIP's business relationships with its individual agents.

29. Upon information and belief, Fidelity's grossly excessive compensation pricing, unilateral retroactive change to its contractual clawback provision, and attempts to charge back its individual agents and agencies have been motivated by a desire to artificially inflate the value of Fidelity and Fidelity Life, its parent company, in the eyes of a potential buyer of Fidelity at the cost of Fidelity's general agents and individual agents.

30. Fidelity's grossly excessive compensation pricing schedule had the desired effect of promoting the sale of Fidelity's life insurance products by BIP's agents, as said agents sold Fidelity's life insurance policies which provided for target premium payments in excess of $27,035,164 from 2015 through 2017.

31. Upon information and belief, Fidelity's grossly excessive compensation pricing schedule had the desired effect of promoting the sale of Fidelity's life insurance products by other general agents and their respective individual agents.

32. Upon information and belief, Fidelity is now intentionally seeking to artificially increase the value of its parent company in the eyes of a potential buyer by wrongfully recapturing commissions and extracting money and value from its agents.

33. Upon information and belief, Fidelity has justified the chargebacks to its agencies and individual agents by asserting that the terms of its Agency Agreement and Individual Agent Agreement give Fidelity the right to unilaterally and retroactively change the terms of those agreements relative to their respective Compensation Schedules and related provisions.

## CLASS ALLEGATIONS

34. **Class Definition**: Plaintiff BIP brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (3) on behalf of itself and a Class of similarly situated general agents and individual agents, defined as follows:

> **Class**: All persons or entities that have entered into an Agreement with Fidelity to sell life insurance and have sold at least one life insurance policy between January 1, 2015 and January 1, 2017.

35. **Numerosity**: The exact number of the members of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. As alleged above, Defendant's website indicates that it has 25,000 licensed agents. It is unknown whether this number is up to date, or whether it includes all individual agents as well as general agencies and sub-agencies.

36. **Commonality and Predominance**: Many questions of law and fact are common to Plaintiff's and the Class's claims, and those questions predominate over any questions that may affect any individual member of the class. Common questions for the class include, but are not limited to:

   a. Did Fidelity repudiate the class members' agreements when it changed the duration of the Clawback Term?
   b. Does Fidelity's Demand Letter constitute a breach of the class members' Agreements?
   c. Does Fidelity's Demand Letter tortiously interfere with the class members' contractual and business relationships?
   d. Was Fidelity unjustly enriched by first agreeing to a one-year Clawback Term and then changing that Clawback Term to two years?

37. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Fidelity's wrongful conduct in violation of the federal laws complained of herein.

38. **Adequate Representation**:  Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by some individual Class members may be relatively small, the expense and burden of individual litigation would make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40. Plaintiff reserves the right to revise the "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and discovery

## COUNT I:  BREACH OF CONTRACT

41. Plaintiff, BIP, incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

42. The aforementioned Agreement established a contractual relationship between the Defendants and the Plaintiff.

43. Plaintiff has duly performed under the Agreement.

44. On or about January 1, 2017, the Defendants repudiated the Agency and Independent Agent Agreements and those of other Class members when it unilaterally changed the terms of said Agreements.

45. Defendants breached the Agreement when it demanded repayment of more than $200,000 in commissions paid to Plaintiff with respect to life insurance policies that had lapsed after more than one year.

46. Defendants have withheld commission payments owed to BIP, other agencies, and Fidelity's Individual Agents, allegedly as an offset against sums that Defendants claim are owed by BIP, other agencies, and other individual agents.

47. The Plaintiff has suffered actual damages as a result of the Defendants' breaches.

48. Under the respective agreement, Plaintiff is are entitled to all of the Attorney's Fees and Costs associated with its successful prosecution of this claim.

49. Upon information and belief, the allegations herein are common among all Class members.

### COUNT II: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

50. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

51. BIP has contractual relationships similar to those at issue here with other life insurance providers.

52. Similarly to their business with Fidelity, BIP conducts its businesses pursuant to those contracts and sell hundreds of millions of dollars in life insurance products for other life insurance providers.

53. When BIP is "vectored," as Fidelity states that it has done or will do in its Demand Letters, BIP's contractual relationships with other life insurance providers are or will be directly damaged.

54. As a result of the Defendant's conduct, BIP has suffered and will continue to suffer lost profits and other consequential damages.

55. Upon information and belief, the allegations herein are common among all Class members.

**COUNT III: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

56. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

57. BIP has business relationships with Individual Agents and sub-agencies.

58. Fidelity knew that BIP was selling life insurance products and intended to continue to sell life insurance policies pursuant to the aforementioned agreement. Fidelity knew that BIP sold life insurance products through Individual Agents and sub-agencies.

59. When Fidelity unilaterally and retroactively changed the Clawback Term, it damaged BIP's current and prospective business relations.

60. Without legal justification, Fidelity intentionally and improperly interfered with Plaintiff's business relationships and prospective agreements.

61. Fidelity knew that changing the Clawback Term would harm BIP's current and prospective business relationships.

62. Fidelity's actions were done with an improper motive.

63. As a result of the Defendant's conduct, the Plaintiff has suffered and will continue to suffer lost profits and other consequential damages.

64. Upon information and belief, the allegations herein are common among all Class members.

**COUNT IV: DETRIMENTAL RELIANCE**

65. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

66. Fidelity made a clear and definite promise to BIP in the Agency Agreement.

67. Fidelity reasonably expected its promise would induce BIP to engage Individual Agents and sub-agencies to sell life insurance products.

68. Fidelity's promises found in the Agency Agreement and Individual Agent Agreement induced actual and reasonable action by BIP to enter into business relationships with Individual Agents and sub-agencies so that they would sell life insurance products.

69. The resulting detriment to BIP can only be avoided by the enforcement of the original agreement.

70. Upon information and belief, the allegations herein are common among all Class members.

### COUNT V: NEGLIGENT MISREPRESENTATION

71. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

72. Pursuant to the above outlined relationship, Fidelity had a duty of care and of good faith and fair dealing to BIP. These duties required the transmittal of accurate information to BIP.

73. The statements made by Fidelity to convince BIP and others to sign the Agreements, especially those regarding the Clawback Term and that those terms would remain the same for issued policies, were false.

74. These false representations were repeated on multiple occasions.

75. Fidelity was negligent in the assertion of these false statements.

76. The statements made by Fidelity to BIP were made with the intention of having BIP act and rely upon Fidelity's negligent assertions.

77. Fidelity knew that BIP would probably rely upon and was, in fact, relying upon Fidelity's negligent statements to sell life insurance products.

78. Fidelity knew that by retroactively changing the terms of the Individual Agent Agreement, BIP would incur damage.

79. As a result of the conduct of negligent misrepresentations by Fidelity, BIP incurred damages.

80. Upon information and belief, the allegations herein are common among all Class members.

### COUNT VI: FRAUDULENT INDUCEMENT

81. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

82. The Defendants made false representations to the Plaintiff regarding the Clawback Term, when it entered into the Agreement.

83. The Defendants knew at the time that they made the representations that they intended to change that provision or that it was a possibility in the near future, but made the representation that the Clawback Term contained in the Agreement was accurate.

84. The representations were made for the purpose of causing the Plaintiff to enter into the Agreement.

85. The Plaintiff and its agents reasonably relied on that representation when they proceeded to enter into life insurance sales agreements with customers.

86. The Plaintiff has suffered and will continue to suffer compensable injury resulting from the misrepresentation.

87. Upon information and belief, the allegations herein are common among all Class members.

### COUNT VII: UNJUST ENRICHMENT

88. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

89. Plaintiff and the Class have conferred a benefit upon Defendants in the form of premiums paid on life insurance policies between the first and second year of the particular policy.

90. Plaintiff and the Class would have sold Defendants' policies with different economic terms if the Clawback Term had been two years instead of one. As a result, Defendants would not have received the benefit of certain policies.

91. Defendants appreciate and have knowledge of the benefits they received.

92. Defendants should not be permitted to retain the ill-gotten gains as a result of the wrongful conduct described herein.

93. Upon information and belief, the allegations herein are common among all Class members.

## COUNT VIII: DEFAMATION

94. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

95. By reporting BIP to Vector, Fidelity knowingly made false statements in writing or orally about BIP.

96. Alternatively, by reporting BIP to Vector, Fidelity negligently made false statements in writing or orally about BIP.

97. These statements were reasonably understood to be defamatory by Vector, Fidelity, and BIP.

98. Fidelity knew or should have known its statements were false when they were made.

99. Fidelity made its statements with the intent to harm BIP.

100. BIP suffered a loss as a result of being reported to Vector by Fidelity.

101. Upon information and belief, the allegations herein are common among all Class members.

### COUNT IX:  VIOLATION OF RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT ("RICO")

102. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

103. Fidelity, Fidelity Life, FS Holdco, and John Doe ("RICO Defendants") have engaged in an enterprise whose activities affect interstate commerce.

104. The RICO Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of extorting and defrauding Plaintiff.

105. Pursuant to and in furtherance of their scheme, the RICO Defendants committed multiple related acts of extortion, retaliation, and fraud, including, but not limited to:

   a) Sending Demand Letters through the U.S. Postal system designed to extort money from Plaintiff by threat;
   b) Attempting to defraud Plaintiff to obtain money by means of false or fraudulent pretenses, representations, or promises;
   c) Threatening Plaintiff with further financial damage by adding Plaintiff to the Vector list, when the RICO Defendants knew such a report would be fraudulent.

106. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

107. As a direct and proximate result of the RICO Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property.

108. Upon information and belief, the allegations herein are common among all Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and all Class members, respectfully requests the following relief:

(a) Actual damages in an amount to be determined at trial;

(b) Declaratory Judgment stating that the Clawback Term cannot be changed retroactively and therefore that all life insurance policies sold before January 2017 are subject to a one-year Clawback Term;

(c) Alternatively, Declaratory Judgment stating that the Individual Agent Agreement and Agency Agreement are illusory and unenforceable to the extent that they allow Fidelity to unilaterally and retroactively change material terms.

(d) Injunctive relief to protect the interests of Plaintiff and the Class;

(e) Compensatory, consequential, and punitive damages in an amount to be determined at trial;

(f) Full disgorgement and restitution of any money Defendant has retained as a result of its wrongful actions;

(g) Treble damages pursuant to 18 U.S.C. § 1964(c);

(h) Pre- and post-judgment interest;

(i) All attorney's fees and costs associated with bringing this action;

(j) Grant any reasonable request to amend Plaintiff's Complaint to conform to the discovery and evidence obtained in this action; and

(k) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____
Angela Grau, Esq.
Gregory L. Ewing, Esq.

Davis, Agnor, Rapaport & Skalny
10211 Wincopin Circle, Suite 600
Columbia, MD  21044
(410) 995-5800