UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Brokerage Insurance Partners, Inc.<br><br>        Plaintiff,<br><br>v.<br><br>Fidelity & Guaranty Life Insurance Company,<br>Fidelity & Guaranty Life,<br>FS Holdco II Ltd., and<br>John Doe<br><br>        Defendants. | Civil Action 17-cv-1815- RDB<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION** |

Plaintiff Brokerage Insurance Partners, Inc. ("Plaintiff" or "Brokerage") moves this Court to enter an Order, *inter alia*: (i) preliminarily approving the Class Action Settlement Agreement ("Settlement Agreement")[1] between the parties; (ii) conditionally certifying a class as defined in the Settlement Agreement (the "Settlement Class"), for purposes of settlement only; (iii) directing the parties to proceed with confirmatory discovery as set forth in the Settlement Agreement; (iv) finding that the class notice procedure set forth in the Settlement Agreement satisfies the requirements of due process and applicable law; (v) appointing Plaintiff as class representative for the settlement class; (vi) appointing Potomac Law Group, PLLC as Class Counsel for the Settlement Class; (vii) appointing Rush Consulting as Settlement Administrator; and (viii) setting a date for the hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed settlement. Plaintiff has consulted with counsel for Defendants Fidelity

---

[1] The Settlement Agreement and its accompanying exhibits are attached as Exhibit A. The proposed Preliminary Approval Order is attached as Exhibit 3 to the Settlement Agreement.

& Guaranty Life Insurance Company ("FGLIC"), Fidelity & Guaranty Life ("FGL"), and FS Holdco II Ltd. ("Holdco") (collectively, "Defendants"), who do not oppose this Motion.

I.   **INTRODUCTION**

Through extended, arm's length negotiations over a period of more than six months, Plaintiff and Defendants have reached an agreement (the "Class Settlement") which, if completed, would resolve this lawsuit fully and finally.  The terms of the Class Settlement are set forth in the Settlement Agreement between the parties, submitted to the Court herewith.

The proposed class is defined as:

> Those persons or entities that: (i) entered into an agreement with FGLIC to sell life insurance; and (ii) sold at least one FGLIC life insurance policy between January 1, 2015 and January 1, 2019 ("Class Period"), which FGLIC life insurance policy: (A) had an annual premium greater than or equal to $25,000.00; and (B) lapsed between the first and second anniversaries of its effective date, for which a commission was charged back or sought, attempted or threatened to be charged back, to the person or entity by FGLIC, **but excludes:** (i) any person or entity who, as of May 31, 2019, was named as a Defendant in the action captioned *Fidelity & Guaranty Life Insurance Co. v. Network Partners International, LLC, Abhinav Sharma, RequiteLife, Inc., Jason Mandel, Tower Strategic Group, LLC, Gregg Kirschner, MRM Advisors, LLC, Joshua Mandel, Rubicon Advisory Partners, Inc., Rebecca Nadler, Evan Pescatore, Agent Does 1-10, and Other Person Does 1-10,* United States District Court, District of Maryland Case No. 1:17-cv-01508-RDB (D. Md.) ("*Network Partners Litigation;* and/or (ii) any person or entity who entered into a separate settlement agreement with FGLIC that was executed prior to the filing of the Agreement with the Court.

Settlement Agreement ¶ 1x.

Plaintiff's counsel has extensive experience in cases such as this, and has conducted such investigation necessary to make an informed evaluation of the proposed Class Settlement.  After a full evaluation and consideration of their case and all particulars, Plaintiff's counsel is of the opinion that the proposed Class Settlement is in the best interest of the Settlement Class (as defined in the Settlement Agreement).  Plaintiff and FGLIC have further agreed to a process of

confirmatory discovery by which Plaintiff will further confirm that the proposed Class Settlement is fair, adequate and reasonable.

As the Class Settlement is the result of good-faith bargaining at arms' length, and as the proposed settlement is fair, adequate, and reasonable, the Court should grant the present Motion and permit the Class Settlement to proceed to confirmatory discovery, Class Notice, and a Final Fairness Hearing, as provided for in the Settlement Agreement.

## II.     PROCEDURAL BACKGROUND

### A.     The Parties Engaged in Vigorous and Contentious Motion Practice.

Plaintiff originally filed the putative class action in the United States District Court, District of Maryland on June 30, 2017, on behalf of itself and a putative class, alleging causes of action for: (1) Breach of Contract; (2) Tortious Interference with Contractual Relations; (3) Tortious Interference with Prospective Business Relations; (4) Detrimental Reliance; (5) Negligent Misrepresentation; (6) Fraudulent Inducement; (7) Unjust Enrichment; (8) Defamation; and (9) Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO)").

In response, FGLIC answered, in part, moved to dismiss, in part, and counterclaimed.  FGL and Holdco moved to dismiss. After receiving these papers and pleadings, on September 22, 2017, Plaintiff filed an Amended Complaint.

The Amended Complaint asserts the following claims: (1) Breach of Contract (against FGLIC and FGL); (2) Tortious Interference with Contractual Relations (against FGLIC, FGL, and Holdco); (3) Tortious Interference with Prospective Business Relations (against FGLIC, FGL, and Holdco); (4) Detrimental Reliance (alternatively to Count I against FGLIC and FGL); (5) Negligent Misrepresentation (alternatively to Count I against FGLIC and FGL); (6) Fraudulent Inducement (against FGLIC and FGL); (7) Unjust Enrichment (alternatively to Count I against FGLIC, FGL, and Holdco); (8) Defamation (against FGLIC and FGL); and (9) Violation of

Racketeer Influenced & Corrupt Organizations Act ("RICO") (against FGLIC, FGL, Holdco, and John Doe).

The Amended Complaint seeks to certify a class composed of all persons who entered into an agreement with FGLIC to sell life insurance and who sold at least one life insurance policy between January 1, 2015 and January 1, 2017.

On October 16, 2017, Fidelity & Guaranty Life and FGLIC filed a Motion to Dismiss in part, seeking to dismiss with prejudice: (i) all but the breach of contract claim against FGLIC; and (ii) all claims against FGL. Holdco also moved to dismiss.

FGLIC also filed, on October 16, 2017, an Answer and Amended Counterclaim against Brokerage, Agent Does 1-10, and Other Person Does, asserting the following causes of action: (1) Fraud (against Brokerage, Agent Does and Other Person Does); (2) Civil Conspiracy to Breach Duty of Agent to Principal and Aiding and Abetting That Breach (against Brokerage and Agent Does); (3) Violation of Racketeer Influenced & Corrupt Organizations Act (against Brokerage and Agent Does); (4) Breach of Contract (against Brokerage); (5) Breach of Contract (against Agent Does); (6) Rescission, Restitution, and Constructive Trust (against Brokerage, in the Alternative); (7) Rescission, Restitution, and Constructive Trust (against Agent Does, in the Alternative); (8) Negligence by Failing to Act with the Fiduciary Duty Required from Agent to Principal (against Brokerage); and (9) Indemnification and Attorneys' Fees (against Brokerage).

### B. Defendants Deny Plaintiff's Claims Against Them and FGLIC Has Taken Discovery To Prove Its Counterclaims.

Plaintiff asserts that Defendants conspired to make FGLIC more attractive to potential buyers by inflating FGLIC's value. Defendants allegedly caused FGLIC to: (i) pay its agents extraordinarily high commissions to increase sales of FGLIC products; and then (ii) "clawback" those commissions to increase cash reserves. Plaintiff alleges that FGLIC improperly collected,

and/or attempted to collect, these commissions back from agents, thereby causing Plaintiff and absent members of the putative class "Charge-Back Damages." Plaintiff further alleges that, in attempting to collect these Charge-Back Damages, FGLIC defamed Plaintiff and the absent members of the putative class by reporting them to Vector One and other third-party collection services.

Defendants vigorously contest the allegations. Defendants deny any and all wrongdoing alleged in the Complaint and Amended Complaint, and do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against them in the litigation. Defendants state that they did not commit the wrongful actions alleged. FGLIC specifically represents that it did not report Brokerage or any member of the putative class to Vector One in connection with its claims for Charge-Back Damages.

Instead, Defendants allege that they were the victims of a fraudulent rebating and premium financing conspiracy by Plaintiff's agents, certain putative class members, and others, who swindled over $60 million in fraudulently-obtained commissions and bonuses from FGLIC. FGLIC alleges that it has overwhelming evidence to establish the claims in its First Amended Complaint.[2]

---

[2] This evidence was obtained largely through discovery in the bankruptcy actions filed by two Defendants in the *Network Partners Litigation*: Abhinav Sharma ("Sharma") and RequiteLife, Inc. ("RequiteLife"). The bankruptcy actions are captioned and docketed as *In re Sharma*, Case No. 18-B-08949 and *In re RequiteLife, Inc.*, Case No. 18-B-08950, United States Bankruptcy Court, Northern District of Illinois, Eastern Division ("Bankruptcy Matters"). This discovery included examination of fourteen (14) witnesses, issuance of 20 Subpoenas *Duces Tecum*, and production of over 91,000 pages of documents. Plaintiff's counsel was invited to attend and participate in the depositions. FGLIC alleges that its forensic accounting expert has been able to use this evidence to trace much (but not all) of the fraudulent transfers of funds that facilitated the premium financing and rebating conspiracy.

On August 17, 2018, the Court denied all pending Motions to Dismiss filed by all parties without prejudice, pending a decision regarding whether the case would be consolidated into the *Network Partners Litigation.*

On August 31, 2018, FGL filed its Answer to Brokerage's Amended Complaint. Also on that date, FGLIC filed its Answer to Amended Complaint, Affirmative Defenses, and Counterclaim, Filed Pursuant to Fed. R. Civ. P. 12(a)(4)(A).

The parties then began the long process of settlement negotiations. The parties filed joint motions to extend the deadlines to respond to the pleadings while settlement negotiations continued, which negotiations have now been completed with the execution and filing of the Settlement Agreement and this Motion.

### C.    The Parties Have Reached Settlement.

After over six months of arm's length negotiations, the parties reached settlement and executed the Settlement Agreement.  *See* Exhibit A attached hereto.

The Settlement Agreement provides, *inter alia*: (i) the proposed class shall be certified for settlement purposes only; (ii) the parties shall engage in confirmatory discovery to confirm that the settlement is fair and adequate; (iii) putative class members may opt out of the class and the Settlement Agreement through a defined process; (iv) Counts II (Tortious Interference with Contractual Relations), III (Tortious Interference with Prospective Business Relations), VIII (Defamation), and IX (RICO) of the Plaintiff's Amended Complaint shall be dismissed with prejudice; (v) any class member who wants to purse a claim against FGLIC under Counts I (Breach of Contract), IV (Detrimental Reliance), V (Negligent Misrepresentation), VI (Fraudulent Inducement), and/or VII (Unjust Enrichment) for Charge-Back Damages may do so through a defined process and, as part of the consideration for the settlement, FGLIC will waive its statute

of limitations defenses against the claim for Charge-Back Damages; (vi) FGLIC may pursue a claim against a class member for Charge-Back Damages through a defined process, and the class member waives its statute of limitations defenses against the claim for Charge-Back Damages; and (vii) all claims for Charge-Back Damages that are not timely filed through the defined process, and all other claims under Counts I (Breach of Contract), IV (Detrimental Reliance), V (Negligent Misrepresentation), VI (Fraudulent Inducement), and/or VII (Unjust Enrichment) shall be dismissed with prejudice.

### III. PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT SHOULD BE GRANTED

The Fourth Circuit teaches that a class settlement in principle "raises a strong interest in finality." *Scott v. Bond*, 734 Fed.Appx. 188, 191 (4th Cir. May 17, 2018). "Courts should foster [class] settlement in order to advantage the parties and promote 'great saving in judicial time and services.'" *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (quoting *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)).

Accordingly, in this District, there is a "strong presumption in favor of finding a settlement fair." *Hoffman v. First Student, Inc.*, 2010 WL 1176641, *2 (D. Md. Mar. 23, 2010). "Because a settlement hearing is not a trial, the Court's role is more balancing of likelihoods rather than an actual determination of facts and law in passing upon the proposed settlement." *Id.* (internal quotations omitted).

As this Court has noted, the Court's goal at the preliminary fairness hearing is to assess whether there is "probable cause" to submit the proposal to members of the class and to hold a full-scale hearing on its fairness. *In re Titanium Dioxide Antitrust Litigation*, 2013 WL 5182093, *3 (D. Md. Sept. 12, 2013). "Put differently, the court's inquiry is whether there has been a basic

showing that the Proposed Settlement Agreements are sufficiently within the range of reasonableness so that notice should be given." *Id.* (internal quotations omitted).

The Court's review at the preliminary fairness hearing considers (1) the "fairness" of the settlement; and (2) the "adequacy" of the settlement. *Titanium Dioxide Antitrust Litigation*, 2013 WL 5182093 at *3.

"With regard to the 'fairness' element, the purpose of the inquiry is to protect against the danger of counsel – who are commonly repeat players in larger-scale litigation – from 'compromising a suit for an inadequate amount for the sake of insuring a fee.'" *Titanium Dioxide Antitrust Litigation*, 2013 WL 5182093 at *3 (quoting *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F.Supp. 1379, 1383 (D. Md. 1983)).

It is crucial to note here that Plaintiff's counsel **receives no fee** in connection with the Settlement Agreement, and thus, the typical concern that class counsel is sacrificing the best interests of the class in exchange for a hefty attorney's fee is entirely absent in the present case.

The factors tending to reveal the fairness of a settlement are those that indicate the presence or absence of collusion among the parties. *Mid-Atlantic*, 564 F.Supp. at 1383 (quoting *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315 (D. Md. 1979)). The Court thus considers whether the proposed settlement is the product of good faith bargaining at arm's length, the posture of the case at settlement, the extent and sufficiency of discovery conducted, counsel's experience with similar litigation and their relevant qualifications, and any pertinent circumstances surrounding the negotiations. *Titanium Dioxide Antitrust Litigation*, 2013 WL 5182093 at *3.

In assessing the adequacy of the proposed settlement, courts should weigh the amount tendered to the plaintiffs against such factors as (1) the relative strength of the plaintiff's case on

the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *Mid-Atlantic*, 564 F.Supp. 1384.

Here, application of the above factors establishes that the settlement is fair and reasonable and that there is "probable cause" to submit the proposal to members of the class and to hold a full-scale hearing on its fairness. The suit was filed more than two years ago, motion practice has been vigorous, and substantial factual and expert analysis has been obtained. In addition, 14 depositions were taken and 91,000 pages of documents were produced in the Bankruptcy Matters. There is no doubt that the parties have had ample opportunity to evaluate the respective strengths and weaknesses of their claims.

Moreover, the settlement was finalized only after intense and protracted negotiations at arm's length, for a period of over six months, between highly-experienced counsel. The parties have weighed the anticipated duration and expense of continuing litigation, on the one hand, against the likelihood of a judgment and the ability to recover, on the other. Putative class members who believe they have a meritorious claim for Charge-Back Damages against FGLIC will be afforded an opportunity to pursue that claim through the procedures set forth in the Settlement Agreement and, as part of its consideration for the Class Settlement, FGLIC has agreed to waive its statute of limitations defenses for these claims.

***Plaintiff's counsel is receiving no attorney's fee from the Class Settlement or the Settlement Agreement.*** In short, there is no indication of any collusion whatsoever in connection with the Class Settlement and the Settlement Agreement. To the contrary, the applicable factors

clearly establish that the settlement is fair, reasonable, and adequate. Accordingly, it should be approved.

### IV. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

The Fourth Circuit holds that "[d]istrict courts have wide discretion in deciding whether or not to certify a proposed class." *Central Wesleyan College*, 6 F.3d at 185 (internal quotations omitted). Issues of class manageability are properly committed to the district court's discretion, because that court generally has a greater familiarity and expertise with the practical and primary factual problems of administration a lawsuit. *Id.*

"Settlement should be a factor, and an important factor, to be considered when determining certification." *Id.* (internal quotations omitted). In other words, "it is altogether proper and consistent for a court to certify a class for settlement purposes while it might have had more difficulty reaching this determination in a different context." *Mid-Atlantic*, 564 F.Supp. at 1391 (internal quotations omitted).

The court follows a two-step process for certification of a class: first, the proposed class must meet Rule 23(a)'s four requirements of numerosity, commonality, typicality, and adequacy; second, the court must then determine that the class fits into one of the categories outlined in Rule 23(b). *Stanley v. Cent. Garden and Pet Corp.*, 891 F.Supp.2d 757, 770 (D. Md. 2012) Here, the proposed Settlement Class meets each of the four Rule 23(a) requirements and also satisfies the requirements of Rule 23(b)(3).

Numerosity is satisfied where joinder of all putative class members would prove to be "impracticable." *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 674 (D. Md. 2013). A class size of 25 to 30 members raises a presumption that the numerosity requirement is met. *Id.*

(citing *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991)).  Here, there are over 50 putative class members, and the numerosity requirement is therefore satisfied.

The commonality, typicality, and adequacy of representation inquiries are similar and overlapping. *Stanley*, 891 F.Supp.2d at 770. To show commonality, there must be "a single common question of law or fact" among class members, although members do not need to share all issues. *Id.* Factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory." *Id.*  Likewise, to show typicality, the claims of class members must be fairly encompassed by the class representative's claims. *Id.* Finally, to demonstrate adequacy of representation, a plaintiff's interests must not be opposed to those of other class members and the plaintiff's attorneys must be qualified, experienced, and able to conduct the litigation. *Id.*

Here, there are numerous common issues of law and fact, including: (i) whether Defendants conspired to inflate FGLIC's cash reserves; (ii) whether Defendants improperly changed FGLIC's compensation structure retroactively; (iii) whether FGLIC improperly charged back commissions and bonuses based on policies that lapsed between the first and second years; and (iv) whether FGLIC reported the members of the Settlement Class to Vector One based upon the charged back commissions.

Further, the claims of Brokerage are typical of the claims of the absent Class Members. Brokerage and the absent Class Members all were appointed agents of FGLIC who sold a FGLIC policy that lapsed between the first and second years of issuance, for which FGLIC sought to charge back a commission. Thus, Brokerage and the Class Members all have the same purported claim that FGLIC improperly charged back the commissions and bonuses that were paid to them from the sales of those lapsed policies.

Finally, Brokerage can adequately represent the interests of the Class Members. There is no conflict between Brokerage's interest and the interests of the other Class Members. And there is no question that Class Counsel are qualified and experienced lawyers who can adequately represent the Class. Therefore, the four requirements of Rule 23(a)(2), numerosity, commonality, typicality, and adequacy, are amply satisfied.

The requirements of Rule 23(b)(3) are also satisfied here. The Court may certify a class under Rule 23(b)(3) if it finds that the questions of law or fact common to the class predominate over individualized questions, and that a class action is superior to other methods of adjudication. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 501 (D. Md. 1998). Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving "economies of time, effort, and expense," and by promoting uniformity of decision as to similarly situated class members without sacrificing fairness. *Id.*

Common questions of fact and law predominate here, because the Class Members' claims are based upon a standard agent agreement with FGLIC and an allegedly standard course of conduct regarding the payment and charging back of commissions and bonuses. Further, the proposed Class Settlement is a fair and efficient method to resolve these claims without burdening the judiciary or the parties with a multiplicity of duplicative lawsuits. Thus, class adjudication is superior here, and the Settlement Class should be preliminarily certified.

## V.   THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013). The form of notice is "adequate if it may be understood by the average class

member." *Id*. Under Rule 23(c)(2)(B), the Court must "direct to class members the best notice practicable under the circumstances." *Id*. (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Here the parties have submitted a detailed proposed Notice attached as Exhibit 1 to the Settlement Agreement, which provides the required information in a clear manner. The proposed Class Notice is to be sent by first-class mail individually to identifiable class members.

In addition, the Parties will make information concerning the Settlement, including the Notice and the Preliminary Approval Order, available via a dedicated website maintained by the Settlement Administrator.

The content of the proposed Class Notice meets all of the requirements of the rules. The Class Notice provided in the Settlement Agreement clearly describes the terms of the Class Settlement, the considerations that cause Class Counsel to conclude that the Class Settlement is fair and adequate, the procedure for opting out of or objecting to the Class Settlement and the date and place of the Settlement Fairness Hearing. The Class Notices will, when mailed and published on the website as suggested, fairly apprise Class Members of the Class Settlement and their options with respect thereto. Accordingly, the Class Notice is adequate and appropriate under the applicable authority, and the Court should exercise its discretion to approve the Proposed Class Notice.

**VI.   THE COURT SHOULD APPOINT POTOMAC LAW GROUP, PLLC AS LEAD COUNSEL AND RUST CONSULTING AS CLASS ADMINISTRATOR**

There is no question that Brokerage's counsel is appropriately appointed as Class Counsel. First, counsel are qualified and experienced in class action litigation and have performed extensive work to date in identifying and investigating potential claims in this action, preparing two version of the class action complaint, and successfully negotiating the proposed Class Settlement.

Rust Consulting should also be appointed as Class Administrator. Rust Consulting is a well-known and well-regarded consulting and administration firm that has administered legal settlements since 1988. Rust provides full services in the administration of legal settlements, including project management, data management, notification, contact centers and websites, claims processing, and fund management. Rust has administered more than 7,000 settlements and projects.

## VII.   CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement Agreement; (ii) conditionally certifying the Settlement Class for purposes of settlement only; (iii) directing the parties to proceed with confirmatory discovery as set forth in the Settlement Agreement; (iv) finding that the class notice procedure set forth in the Settlement Agreement satisfies the requirements of due process and applicable law; (v) appointing Plaintiff as class representative for the settlement class; (vi) appointing Potomac Law Group, PLLC as Class Counsel for the Settlement Class; (vii) appointing Rush Consulting as Settlement Administrator; and (viii) setting a Final Approval Hearing for January 17, 2020, or a date that otherwise comports with the Court's schedule, at which the Court will finally determine the fairness, reasonableness, and adequacy of the Class Settlement.

Dated: October 14, 2019         /s/ Gregory L. Ewing
Gregory L. Ewing, Esq. (Bar No. 20142)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Phone: 202-204-3005
email: gewing@potomaclaw.com

***Attorney for Plaintiff***
***Brokerage Insurance Partners, Inc.***

## **CERTIFICATE OF SERVICE**

      I hereby affirm that I caused a copy of the foregoing document to be served electronically by CM/ECF this 14th day of October, 2019, to:

| | |
|---|---|
| Frank Taylor<br>Julie H. Firestone<br>Norton Rose Fulbright US LLP<br>RBC Plaza, 60 South Sixth Street, Suite 3100<br>Minneapolis, MN 55402<br>frank.taylor@nortonrosefulbright.com<br>julie.firestone@nortonrosefulbright.com | S. Gale Dick<br>Cohen and Gresser<br>2001 Pennsylvania Ave., NW, Suite 300<br>Washington, D.C. 20006<br>sgdick@cohengresser.com<br>*Counsel for Defendant FS Holdco II* |

Priscilla Donovan
Daniel J. Donovan
Donovan and Rainie LLC
One South St., Suite 1120
Baltimore, MD 21202
pard@donovanrainie.com
djd@donovanrainie.com
*Attorneys for Defendants Fidelity & Guaranty*
*Life Insurance Company and*
*Fidelity & Guaranty Life*

                                                                             */s/ Gregory L. Ewing*
                                                                             Gregory L. Ewing